IN THE UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

U.S.C.A. – 7th Circuit
R E C E I V E D

SEP 08 2022   2   CASE NO. 20-1889

Jurijus Kadamovas

PETITIONER - APPELLANT

V.

T.J. WATSON, WARDEN

RESPONDENT - APPELLEE

Appeal from the U.S. District Court for the Southern District of Indiana, Terre Haute Division.

NO: 2-19-CV-00540-JPH-HJA

HONORABLE JAMES P. HANLON.

## RENEW AND SUPPLEMENT TO THE MOTION FOR COURT TO TAKE ACTION ON APPELANT BRIEF NO. 20-1889 Doc. #19, FILED ON 3/28/22

UPDATE, STATUS REPORT, AND ADDITIONAL INFORMATION IN SUPPORT OF THIS SUPPLEMENT, - RENEW.

COMES THE PETITIONER Jurijus Kadamovas PRO SE, AND FOR THIS CAUSE OF ACTION STATES AS FALLOW;

ON 06/29/22 AN ATTORNEY APPOINTED FOR MOTION UNDER 2255 FILED NOTICE OF MOTION AND KADAMOVAS MOTION FOR ORDER DIRECTING THE BOP TO PERMIT ACCESS TO LEGAL MATERIALS" SEE

CASE 2:02 - CR OO22O - MCS Document 242O FILED O6/29/22 TO UNITED STATES DISTRICT COURT FOR CENTRAL DISTRICT OF CALIFORNIA.

I BELIVE THAT THIS MOTION WAS INCOMPLETE AND POORLY PREPARED BECAUSE OF INEFFECTIVE ASSISTANCE OF CONSULS WHO WAS APPOINTED FOR MY MOTION UNDER 2255. I WAS NOT ALLOWED TO PARTISAPATE IN DRAFTING OF THIS MOTION NOR I HAD A CHANCE TO REVIEW THIS MOTION BEFORE IT WAS FILED AS WELL HAD NO CHANCE TO SUBMIT MY OWN AFFIDAVIT TO REBUT THE AFFIDAVIT OF TODD R. ROYER, THE UNIT MANAGER WHO PROVIDED INCORRECT INFORMATION ABOUT INMATES IN THE SCU UNIT ACCESS TO THE COMPUTER WITH PRINTOR FOR INMATES TO REVIEW THEIR DISCOVERY MATERIALS.

ON O8/O2/22 GOVERNMENT FILED " GOVERNMENT OPPOSITION TO NOTICE OF MOTION AND KADAMOVAS' MOTION FOR ORDER DIRECTING THE BUREAU OF PRISONS TO PERMIT ACCESS TO LEGAL MATERIALS; DECLARATION OF TODD R. ROYER" SEE DOCUMENT 2425 FILED O8/O2/22 TO THE US DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA SAEE 2:02-CR- OO22O MCS.

IN PART OF GOVERNMENT OPPOSITION ARGUMENT #3 (A), GOVERNMENT STATES:

**A.    This Court Has No Jurisdiction to Hear Defendant's Motion**

Despite defendant's efforts to avoid a jurisdictional bar by characterizing his claim as something other than a claim concerning

2.

his condition of confinement, the manner in which defendant is afforded the opportunity to review the discovery in his case falls squarely within the scope of such a claim, and, thus, must be raised and heard in the Southern District of Indiana, where FCC Terre Haute where defendant is housed is located.  See Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004) (challenges to conditions of inmate's confinement are only cognizable pursuant to 28 U.S.C. § 2241 and may only be brought in district where inmate is confined); Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir. 2000) ("...petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court.")

On 08/22/22 THE DISTRICT COURT ISSUED "ORDER DENYING DEFENDANT KADAMOVAS MOTION FOR ORDER DIRECTING BUREAU OF PRISONS TO PERMIT ACCESS TO LEGAL MATERIALS (ECF No. 2420)" SEE CASE 2:01-cr-00220 MCS Doc 2430. IN PART THE COURT STATE: "CONTENTION IS THAT KADAMOVAS MOTION IS NOT APPROPRIATE FOR REVIEW BY THIS COURT... THE CIRCUMSTANCES GIVING RISE TO KADAMOVAS CLAIM ARE OCCURRING IN VIGO COUNTY WHICH LIES WITHIN THE VENUE OF THE SOUTHERN DISTRICT OF INDIANA. SEE 28 U.S.C § 94 (b)(2)." SEE ON PAGE 2-3 FOOT NOT 2.

## ARGUMENT

THE POINT OF THIS ARGUMENT THAT I ACTUALLY

3.

DID FILED PETITION FOR WRIT OF Habeas corpus PERSUANT TO 28 USC 2241 INTO THE United States DISTRICT Court Southern DISTRICT OF Indiana Terre Haute DIVISION IN October 2019 Among THE FIVE OTHER ISSUES THAT I RAISED IN MY 2241 PETITION, WAS THE VERT SAME ISSUE THAT Ineffective Attorneys FOR 2255 TRYED TO FILE IN TO THE Court FOR Central District OF California, See My ORIGINAL PETITION FOR WRIT OF Habeas corpus PERSUANT TO 28 USC 2241, Conclusion IN Paragraph #88;

"Petitioner Karamovas WAS NOT PROVIDED FULL Access TO HIS DISCOVERY MATERIALS BEFORE OR AFTER HIS TRIAL, Government WAS ABLE TO PREVAIL ON DIRECT APPEAL BECAUSE Karamovas WAS DEPRIVED OF Access TO HIS LEGAL MATERIALS, PARTICULARY HIS TRIAL TRANSCRIPTS TRANSLATED INTO A LANGUAGE HE CAN UNDERSTAND, AND HE IS NOT ALLOWED TO HAVE HIS DISCOVERY (≈ 95 ODD PAGES) ON PAPER... HE STILL NEEDS TO WORK ON PREPARING FOR HIS RETRIAL OR HIS 28 USC 2255 PROCEEDINGS AND WITHOUT MEANINGFUL AND COMPLETE Access TO All LEGAL MATERIALS AND WITHOUT ADEQUATE PROTECTION OF HIS ATTORNEY-Client COMMUNICATIONS, HE WILL NOT SIMPLY BE UNABLE TO DO SO. To HAVE AN ATTORNEY, BUT NOT HAVING MEANINGFUL Access TO All LEGAL

4.

MATERIALS WILL PROVIDE A <u>FALSE SENSE OF SECURITY</u> AND INEVITABLY WILL LEAD TO CONSTITUTIONALLY DEFECTIVE REPRESENTATION THAT KADAMOVAS CAN NOT AFFORD."

SEE ALSO ARGUMENT THREE FOR APPELANT BRIEF IN CAPITAL CASE No. 20-1889 TO THIS COURT. IN MY APPEAL TO 7TH CIRCUIT I ACCOMMODATED THE ISSUE WITH ACCESS TO MY LEGAL DOCUMENTS, ARGUMENT THREE" WITH FOUR OTHER ARGUMENTS THAT DEMONSTRATE STRUCTURAL PROBLEMS OR OBSTRUCTED PROCEDURAL POSSIBILITY FOR SEEKING RELIEF UNDER 2255 MOTION, I BELIVE THAT DENYING MY 2241 PETITION THE DISTRICT COURT IN INDIANA FAILED TO CONSIDER ANY OF 5 (FIVE) ISSUES THAT I PRESENT IN MY 2241 PETITION. I ALSO BELIVE THAT I WILL PREVAIL ON THE MERITS OF MY CLAIMS IF WILL GIVE A CHANCE. SEE ATTACHED ARGUMENT FOR "KADAMOVAS'S RIGHT TO CONFIDENTIAL COMMUNICATIONS WITH HIS COUNSEL IS PROTECTED BY THE CONSTITUTION." AS ATTACHMENT #1.

## <u>ADDITIONAL INFORMATION FOR THE</u> <u>STATUS REPORT</u>

KADAMOVAS DID NOT FILE HIS MOTION FOR 2255 FOR REASONS THAT HE EXPLAINED IN HIS APPELANT

5.

BRIEF No 20-1889 TO THIS COURT AS WELL FOR REASONS IN THIS MOTION ABOVE. I BECIVE THAT MY 2255 WILL BE NEWER FILED, BECAUSE OF ALL THIS EXTRAORDINARY COMPLEXITY OF THIS CASE INCLUDE THAT ATTORNEYS FOR MY CO-DEFENDANT MIRNEL WILL BE NOT ABLE TO TRAVEL TO RUSSIA FOR INVESTIGATE HIS MITIGATION BECAUSE OF RESTRICTIONS ON TRAVEL. SEE ATTACHED THE US ATTORNEY ADVISED THAT DUE DATE FOR THE 2255 MOTION WILL BE APRIL 7, 2023 AS ATTACHMENT #2

## CONCLUSION

PETITIONER KABAMOVAS INCORPORATES MOTION FOR COURT TO TAKE ACTION ON APPELANT BRIEF No. 20-1889, DOC. #19 FILED ON MARCH 28, 2022 AS IF RESTATED FULLY HEREIN AND RESPECTFULLY ASKING THIS COURT TO CONSIDER ALL CIRCUMSTANCES MANTIONET ABOVE AS RENEW AND SUPPLEMENT FOR DOC. #19, THIS COURT MUST RULE ON THIS CASE.

DATED 2 OF SEPTEMBER 2022

RESPECTFULLY SUBMITTED

JULIYUS KABAMOVAS PRO SE

6.

DECLARATION OF MAILING

The undersigned does attest under peins of porjury that he did mail this original motion " Renew and Supplement to the Motion for Court to Take action on appecant Brief No. 20-1889 dou. #19, Filed on 3/28/22 to the Court of Appeals for the Seventh Circuit 219 South Dearborn Street, Chicago Illinois 60604-1874 via U.S. Mail, sufficient First Class postage Attached thereto and mail on this 5 March 2022 day.

USPS TRACKING #
& CUSTOMER
RECEIPT

**9114 9022 0078 9765 4918 71**
For Tracking or inquiries go to USPS.com
or call 1-800-222-1811.

Jurisus Kadamouas
#21050-112
USP Terre Haute
P.O. Box 33
Terre Haute, IN 47808

Julisus Kadamouas

ATTACHMENT # 1

## Argument

### I. Kalamovas will prevail on the merits of his claims

#### A. Kalamovas's right to confidential communications with his counsel is protected by the Constitution

For those not in prison, "[m]ail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). Of course, Mr. Doe is in prison. "Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoners. An inmate does not retain rights inconsistent with proper incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). On the other hand, "[a] prisoner inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives of the correctional system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). One of the general rights that prisoners retain, to some degree, is the ability to communicate by mail. For, "[t]he Supreme Court has recognized that prisoners have protected First Amendment interests in both sending and receiving mail." *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (citing *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78 (1987)).

Of course, mail to and from attorneys is different than ordinary correspondence. For, "[t]he attorney-client privilege is centrally concerned with confidences communicated by the client to his lawyer to enable the lawyer to formulate an effective

[1]

litigation strategy." *Guajardo-Palma v. Martinson*, 622 F.3d 801, 802 (7th Cir. 2010). This communication ability is intertwined with the right of access to the courts that the Supreme Court has concluded "is an aspect of the First Amendment right to petition the Government for grievances." *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 741 (1983). *See also e.g., Jackson v. Lemmon*, No. 1:16-cv-02732-WTL-MJD, 2017 WL 4682809, * 3 (S.D. Ind. Oct. 18, 2017), *aff'd*, 737 Fed. App'x 795 (7th Cir. 2018) (same). Other cases have noted that the right also emanates from due process. *See, e.g. Jutrowski v Township of Riverdale*, 904 F.3d 280, 294 n.17 (3d Cir. 2018). Regardless of its precise source, "the opportunity to communicate privately with an attorney is an important part of that meaningful access." *Dreher v. Sielaff*, 636 F.2d 1141, 1144 (7th Cir. 1980).

A prisoner cannot prevail on his or her claim that the right to court access was violated unless the prisoner demonstrates "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996). This has led some courts to conclude that reading of legal mail outside of a prisoner's presence does not implicate the Constitution unless some actual injury arises. *See Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010). Other courts, however, have held that it is not necessary to show any actual injury because the possibility or likelihood that legal mail will be read outside of the prisoner's presence is sufficient to cause harm to the prisoner's right to expression under the First Amendment, regardless of any effect on his or her access to the court. *See, e.g., Al-Amin*, 511 F.3d at 1332-33; *Hayes v.*

[2]

*Idaho Correctional Center*, 849 F.3d 1204 (9th Cir. 2017); *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006).[1]

The Seventh Circuit has taken a middle position. In *Harrison v. County of Cook, Ill.*, 356 Fed. App'x 250 (7th Cir. 2010), the court noted that an allegation that privileged mail is regularly opened outside of a prisoner's presence could state a claim for violations of the prisoner's "rights of free speech and free association." *Id.* at 253. However, later that year, in *Guajardo-Palma*, the court concluded that "since the purpose of confidential communication with one's lawyer is to win a case rather than enrich the marketplace of ideas, it seems more straightforward to base the concern with destroying that confidentiality on the right of access to the courts." *Id.* at 802. Acknowledging *Casey*, the court recognized that to demonstrate interference with the right of access to

---

[1]    As the Court noted in *Jones*:

> [a] state pattern and practice, or, as is the case here, explicit policy of opening legal mail outside the presence of the addresses inmate interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmates right to freedom of speech The practice deprives the expression of confidentiality and chills the inmates' protected expression, regardless of the state's good faith protestations that it does not, and will, read the content of the communications. This is so because the only way to ensure that mail is not read when opened . . . is to require that it be done in the presence of the inmate to whom it is addressed.

461 F.3d at 359 (internal quotation and citations omitted). *See also, e.g., Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) ("improperly opening a prisoner's mail does implicate at least the First Amendment"); *Davis v. Goord*, 320 F. 3d 346, 351 (2d Cir. 2003) (prisoners have the right to be present when their legal mail is opened, although isolated incidents of mail tampering are usually insufficient to establish a constitutional violation).

[3]

the courts, the prisoner must show "hindrance" in his or her ability to communicate with counsel. *Id.* at 805. But the court stressed that this was not a major obstacle and, in fact, imposed no more of a burden than merely proving that it was likely that the mail was being read outside of the prisoner's presence:

> [P]roof of a *practice* of reading a prisoner's correspondence with his lawyer should ordinarily be sufficient to demonstrate hindrance [demonstrating interference with a right of access to the courts]. The reason is that knowledge, inferred from policy or practice, by a prisoner's lawyer that prison officials are likely to read his communications with his client (because they refuse to let him be present when they open the lawyer's letter to see whether it contains contraband or other illicit material) will to a high probability reduce the candor of those communications

*Id.* at 805 (emphasis by the court) (internal citations omitted).

It is thus clear that, where it is likely that the prisoner's attorney-client mail is being read outside of the prisoner's presence because of a practice or policy of doing so, that practice or policy implicates the prisoner's constitutional rights.[2]

**C.    New Castle's challenged mail policy is unconstitutional because the mail cannot be reviewed in the presence of the prisoner, and only to check for contraband**

---

[2]    Many of the above cases dealt with the opening of incoming mail. But the interests that prisoners have in their confidential communications with their attorneys is no different for outgoing mail to an attorney as opposed to incoming mail from an attorney. *See, e.g., Tidwell v. Butler*, No. 16-cv-0384-SMY, 2017 WL 2733966, *7 (S.D. Ill. June 23, 2017) (discussing the "hindrance" standard in *Guajardo-Palma* with reference to a prisoner's outgoing mail to attorneys). As noted by the Supreme Court, "[t]he implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming material." *Thornburgh*, 490 U.S. at 413.

**1.     Restrictions on mail between prisoners and their attorneys must be assessed under the factors set out in *Turner v. Safley***

In *Turner* the Court noted that constitutional rights of those incarcerated could be limited by policies and practices that are "reasonably related to legitimate penological interests" 482 U.S. at 89. The Court set out the test that is to be used to assess the validity of the impingement on constitutional rights of those incarcerated and used that test to uphold a prohibition on prisoners in different institutions communicating with each other, while striking down regulations unduly restricting prisoners from marrying.[3] The Court laid out this multi-part test as follows:

1.     Prison officials must first demonstrate a "valid, rational connection" between the infringement on the prisoner's rights and "the legitimate governmental interest put forward to justify [that infringement]." 482 U.S. at 89.

2.     Next, courts must consider whether "alternative means of exercising the right . . . remain open" to the prisoner. *Id.* at 90.

3.      Third, "the impact accommodation of the asserted constitutional right . . . on guards and other inmates, and . . . the allocation of prison resources," is weighed. *Id.*

4.      And finally, courts consider whether there are ready alternatives "that fully accommodate[] the prisoner's rights at *de minimis* cost to valid penological interests." *Id.* at 91.

"The four factors are all important, but the first one can act as a threshold factor,

---

[3]     Whether the right of access to courts is viewed as emanating from the First Amendment or the Fourteenth, the validity of impingement upon it is subject to review by using the test set out in *Turner*. "'*Turner* applies to prison restrictions relating to rights *not* typically subject to strict scrutiny,' including access to courts." *McGehee v. Hutchinson*, --F. Supp. 3d--, 4:17-cv-00179 KGB, 2020 WL 2841589, *47 (E.D. Ark. May 31, 2020) (quoting *Roe v. Crawford*, 514 F.3d 789, 794 (8th Cir. 2008)) (further citation omitted) (emphasis by the court).

regardless of which way it cuts." *Singer v. Raemisch*, 593 F.3d 539, 534 (7th Cir. 2010). "Therefore, if a regulation is not rationally related to a legitimate and neutral government objective, a court need not reach the remaining three factors." *Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005) (internal citation omitted). On the other hand, although each *Turner* factor must be considered, "[w]here . . . there is only minimal evidence suggesting that the prison's regulation is irrational, running through each factor at length is unnecessary." *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009).

A prisoner-plaintiff bears the burden of demonstrating that a prison regulation is unconstitutional. *Overton*, 539 U.S. at 132. However, "[a]lthough the burden of persuasion is on the prisoner to disprove the validity of a regulation, prison officials must still articulate their legitimate governmental interest in the regulation and provide some evidence supporting their concern." *Riker v. Lemmon*, 798 F.3d 546, 553 (7th Cir. 2015) (internal quotations and citations omitted). On the other hand, a court must "accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton*, 539 U.S. at 132.

> 2.    **The Constitution requires that mail between prisoners and their attorneys be reviewed only in the presence of prisoners and only to check for contraband**

[6]

Prior to *Turner*, in *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court found that the First Amendment was not violated when prisoner-attorney mail was opened in the presence of the prisoner to check for contraband, provided the mail was not read.

> [T]his could in no way constitute censorship, since the mail would not be read. Neither could it chill such communications, since the inmate's presence insures that prison officials will not read the mail. The possibility that contraband will be enclosed in letters, even those from apparent attorneys, surely warrants prison officials' opening the letters.

*Id.* at 577. The penological interest in security justified this limited impingement on the prisoner's constitutional rights. And, subsequent to *Turner* courts have consistently concluded, through application of *Turner*'s four-part test, that the system approved of in *Wolff* where attorney-client mail is opened and reviewed only in the prisoner's presence and only to check for contraband, is what the Constitution demands.[4]

In *Jones* the court addressed a new legal mail rule that had been put into place after at least four letters processed through a New Jersey mail processing center shortly after September 11, 2001, were found to contain anthrax, killing five persons. 461 F.3d at 355. In response, the New Jersey Department of Correction suspended its normal mail

---

[4]     Other courts reached this conclusion prior to *Turner*. In *Ramos v. Lamm*, 639 F. 2d 559 (10th Cir. 1980), the court agreed with the district court's holding that if "outgoing privileged (legal) mail may be opened, it can only be opened in the presence of the sending inmate," and that otherwise the First and Fourteenth Amendments would be violated. *Id.* at 582. And, in *Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir. 1981), without citing to a particular constitutional provision, the court stated only that "[p]rivileged prisoner mail, that is mail to or from an inmate's attorney and identified as such , may not be opened for inspections for contraband except in the presence of the prisoner." (citing *Wolff*, 418 U.S. at 576-77).

policy, establishing remote areas in the prisons where legal mail was to be opened outside of the presence of prisoners. *Id.* at 356-57. Assessing the new policy under *Turner*, the court concluded that the prison authorities simply had not demonstrated a valid rational connection between anthrax letters that had occurred in 2001 and the continuation of the policy years later. *Id.* at 360-63. The court therefore affirmed the district court that had held that the prisoners had a constitutional right to be present when their legal mail was opened. *Id.* at 357, 364. In *Al-Amin* the court used the four *Turner* factors to conclude that its pre-*Turner* precedent establishing that prisoner-legal mail could only be reviewed in the presence of the prisoner where it could be checked for contraband was correct and was what the Constitution required. 511 F.3d at 1330-31.

The Seventh Circuit, in *Guajardo-Palma* did not utilize the *Turner* factors, but instead summarized the Supreme Court's approach in *Wolff,* allowing mail to be opened, but only in the presence of the prisoner, without the mail being read. 622 F.3d at 804-05. Following the summary, the court simply concluded that "[t]he approach sketched in *Wolff* to lawyer-prisoner mail may not be ideal, but it is the best that has been suggested, and that's good enough." *Id.* at 805. It is also what is required by the Constitution.

ATTACHMENT #2



U.S. Department of Justice

*United States Attorney*
*Central District of California*

*Bram M. Alden*
*Assistant United States Attorney*
*Chief, Criminal Appeals Section*
*bram.alden@usdoj.gov*

*1000 United States·Courthouse*
*312 North Spring Street*
*Los Angeles, California 90012*
*(213) 894-3898 (telephone)*

August 4, 2022

Ajay Kusnoor
Pamela Gomez
Deputy Federal Public Defenders
321 E. 2nd Street
Los Angeles, CA 90012

Timothy J. Foley, Esq.
1017 "L" Street
Number 348
Sacramento, CA 95814

Florence Patti
Jean Giles
Indiana Federal Community Defenders Inc.
111 Monument Circle Suite 3200
Indianapolis, IN 46204

Re:   *United States v. Iouri Mikhel and Jurijus Kadamovas*, C.D. Cal.
      No. 02-220-MCS—Fifth Agreement Regarding Timing of Initial 28
      U.S.C. § 2255 Motions

     This letter memorializes plaintiff United States of America's fifth
agreement regarding the filing of 28 U.S.C. § 2255 motions by
defendants Iouri Mikhel and Jurijus Kadamovas, challenging their
convictions and death sentences imposed in C.D. Cal. Case No. 02-220-
MCS. By and through Assistant United States Attorney Bram M.

*United States v. Mikhel and Kadamovas,*
C.D. Cal. No. 02-220-MCS
August 4, 2022
Page 2 of 3

Alden, plaintiff agrees as follows:

- Under 28 U.S.C. § 2255(f)(1), defendants were required to file their motions to vacate, set aside, or correct their sentences on or before October 7, 2020—one year following the date on which their judgments of conviction became final.

- Via prior letters to defense counsel, plaintiff agreed to waive the October 7, 2020 statutory deadline through and including October 7, 2022, and not to invoke the timeliness bar so long as defendants file their motions by October 7, 2022.

- Based on both (1) the exceptional complexity of this capital case—which resulted from a seven-month-long trial and generated thousands of pages of briefing and motions on direct appeal, and (2) defense counsel's good-faith representations regarding the effect of COVID-19-related restrictions and travel restrictions to Russia on their ability to complete and file their clients' motions by October 7, 2022, plaintiff agrees not to pursue, and to affirmatively waive, any statute of limitations defense pursuant to 28 U.S.C. § 2255(f)(1) for any § 2255 motion defendants file on or before April 7, 2023.

- The sole basis of this agreement is plaintiff's consent and waiver. Plaintiff maintains its right to object to any request for an extension of 28 U.S.C. § 2255(f)'s deadlines without the government's consent or waiver. Plaintiff maintains that the district court has neither statutory authority nor jurisdiction to entertain requests for extension of § 2255(f)'s deadlines. *See, e.g., United States v. Asakevich,* 810 F.3d 418, 420 (6th Cir. 2016); *United States v. Leon,* 203 F.3d 162, 164 (2nd Cir. 2000); *United States v. Hernandez,* 431 Fed. Appx. 813, 814 (11th Cir. 2011); *United States v. White,* 257 Fed. Appx. 608, 609 (4th Cir. 2007);

*United States v. Mikhel and Kadamovas,*
C.D. Cal. No. 02-220-MCS
August 4, 2022
Page 3 of 3

> *United States v. McFarland,* 125 Fed. Appx. 573, 574 (5th Cir.
> 2005); *United States v. Moore,* 56 Fed. Appx. 686, 687 (6th Cir.
> 2003).

- Absent further written agreement, plaintiff maintains its right to dispute the timeliness of any § 2255 motion or supplement filed after April 7, 2023, and to dispute defendants' entitlement to equitable tolling.


Very truly yours,

STEPHANIE S. CHRISTENSEN
Acting United States Attorney

*/s/ Bram M. Alden*

BRAM M. ALDEN
Assistant United States Attorney
Chief, Criminal Appeals Section