IN THE UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

U.S.C.A. — 7th Circuit
RECEIVED
NOV 25 2025 5

CASE NO. 20-1889

JURIGUS KADAMOVAS
PETITIONER - APPELLANT
V.
T.J. WATSON, WARDEN
RESPONDENT - APPELLEE

APPEAL FROM THE US DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, TERRE HAUTE DIVISION
NO 2-19-CV-00580. JPH-MJD
HONORABLE JAMES P. HANLON.

MOTION IN OPPOSITION TO RESPONDENT-APPELLEE WARDS'S MOTION FOR LEAVE TO TRANSFER PRISONER.

COMES THE PETITIONER JURIGUS KADAMOVAS PRO SE, AND FOR THIS CAUSE OF ACTION STATES AS FALLOWS:

KADAMOVAS OPPOSE APPELLEE'S MOTION FOR LEAVE TO TRANSFER PRISONERS BECAUSE KADAMOVAS IS ONE OF THE PLAINTIFF IN THE LAWSUIT FILED IN TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT COURT FOR THE DISTRICT OF COLUMBIA ON 10/21/25. THIS IS AN ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF FROM THE TRAMP ADMINISTRATION'S EXPRESS TARGETING OF PLAINTIFFS FOR CATEGORICAL, UNLAWUL, AND UNCONSTITUTIONAL PUNISHMENT OF INCARCERATION IN CONDITIONS OF "MONSTROSITY" ADMAX. SEE CASE 1:25-CV-03742-TJK

FOR THIS REASON KADAMOVAS RESPECTFULLY REQUEST THAT RESPONDENT-APPELLEE WARDS'S MOTION FOR LEAVE TO TRANSFER PRISONER BE DENY.

ADDITIONAL INFORMATION FOR THE STATUS REPORT ON MOTION UNDER 2255

KADAMOVAS WISHES NOT TO SURRENDER HIS RIGHT TO FILE MOTION UNDER SECTION 2255. THEREFORE APPOINTED ATTORNEY ON 10/03/23 FILED INCOMPLETE PETITION, AND IN A SECTION "INADEQUACY OF THE PROCEEDINGS" EXPLAIN WHY THIS MOTION CANNOT BE ADEQUATE OR EFFECTIVE. SEE ATTACHET AS ATTACHMENT #1 THE RELEVANT PART FOR COURT CONVINIENCE.

ALL ISSUES THAT KADAMOVAS FILE TO THIS COURT OF APPEALS STILL VERY IMPORTANT AND DIRECTLY RELATED TO HIS PROCEEDINGS UNDER SECTION 2255 WHICH WILL REMAIN INADEQUATE OR INEFFECTIVE UNTIL THIS COURT WILL CONSIDER AND RULE ON ALL ISSUES PRESENTED IN PENDING APPELATE BRIEF.

THEREFORE KADAMOVAS RESPECTFULLY ASKING THIS COURT TO TAKE AN ACTION ON HIS APPEAL FILED ON 05/28/2020

DATED 6 OF NOVEMBER 2025

RESPECTFULLY SUBMITED

[signature]

JURIJUS KADAMOVAS

DECLARATION OF MAILING

THE UNDERSIGNED DOES ATTEST UNDER PENALTY OF PURJURY THAT HE DID MAIL THIS ORIGINAL MOTION TO THE COURT OF APPEALS FOR THE SEVENTH CIRCUIT 219 SOUTH DEARBORN STREET, CHICAGO IL. 60604-1874 VIA U.S MAIL, SUFFICIENT FIRST CLASS POSTAGE ATTACHED THERETO AND MAIL ON THIS 6 OF NOVEMBER 2025 DAY.

JURIJUS KADAMOVAS
# 41050-112
USP TERRE HAUTE
P.O BOX 33
TERRE HAUTE, IN 47808

[signature]

JURIJUS KADAMOVAS.

ATTACHMENT #1

**INADEQUACY OF THE PROCEEDINGS**

The proceedings under 28 U.S.C. § 2255 cannot be full and fair or reliable under the circumstances, due to the actions of the government, the denial of fundamental rights, limited time and resources, and the inability of Jurijus Kadamovas to participate in this motion for relief.

Throughout these proceedings, Mr. Kadamovas has been denied meaningful access to legal materials, including the voluminous discovery produced to defense counsel, and denied the ability to confidentially communicate with counsel, because prison authorities have repeatedly infringed on the attorney-client relationship and improperly reviewed confidential communications. Additionally, some of Mr. Kadamovas' legal materials have been destroyed or lost. Together with Mr. Kadamovas' inability to understand the trial proceedings—at the time of trial, Mr. Kadamovas did not speak English and was denied competent interpreters—these problems have prevented Mr. Kadamovas from fully participating in legal proceedings, including the trial, the appeal, and the § 2255 proceedings currently before this Court, and thus necessarily render this motion incomplete and subvert the fairness and the reliability of the process.

From the early days of this prosecution, there has been conflict regarding Mr. Kadamovas' access to legal materials and his ability to understand and review the evidence against him, the nature of the prosecution, the procedures applicable

to his case, and his legal options. This lack of access and understanding has led to substantial difficulties involving his ability to communicate and cooperate with his attorneys, as well as difficulties preparing for trial and participating in the appeal and postconviction litigation. See allegations set forth in Claim 10 (Denial of Access to Case Materials).

At the time of his arrest, Mr. Kadamovas, a Lithuanian citizen born and raised in the Soviet Union and a native Russian speaker, had little command of the English language. The documents produced by the government regarding the charges were voluminous and it was simply impossible, given both his lack of English language skills and the restrictions on access, for Mr. Kadamovas to review and understand the discovery in this case and the evidence offered against him.

Prior to trial, Mr. Kadamovas and his appointed counsel asserted on several occasions that the defendant lacked sufficient access to a computer to review discovery and to aid in the preparation of his defense. *See*, *e.g.*, Dkt. Nos. 824, 939. At one point, the defense team purchased a computer for Mr. Kadamovas to use, but the jail refused to allow him sufficient time and a suitable confidential location for use. Dkt. No. 824 at 3-4. In addition, funding for translation of key documents into Russian was inadequate. In all, only some 200 of the 90,0000-plus pages of discovery—less than 1%—were translated into Russian. Ex. 134 (Chart of

Translations to Russian). Eventually, the parties entered into a stipulation regarding computer access, only to have the stipulation unravel as the trial approached. Dkt. Nos. 833, 939. It was not until forty-three days into the trial that the trial judge finally ordered the jail to allow Mr. Kadamovas to use a computer, supplied by the defense and equipped with translation software, in his cell. Tr. 11/16/2006 at 5-6; Ex. 120 (O'Donnell dec.); Ex. 121 (Kadamovas dec.).

Translation problems occurred throughout the trial. See the allegations set forth in Claim 11 (Misleading and Inaccurate Translation at Trial), incorporated by reference. Indeed, Mr. Kadamovas could not understand the charges against him due to the non-translation of the indictment and the delays in the translation of the superseding indictments. Then, at trial, Mr. Kadamovas was unable to hear the Russian-language testimony of the key witnesses, a problem the trial court refused to correct when counsel objected. Tr. 10/11/06A at 5-8. Court-appointed interpreters mistranslated and distorted testimony. Ex. 112 (Spivakovsky dec.). The circumstances prevented Mr. Kadamovas from exercising his right to confront his accusers and to mount a defense.

Regrettably, the lack of access to legal materials, lack of confidentiality, and translation issues continued after Mr. Kadamovas was transferred to the United States Penitentiary at Terre Haute after the trial. Mr. Kadamovas was not allowed by the prison to keep the discovery in his cell. Ex. 121 ¶ 3. Numerous DVDs were

confiscated, disks went missing, and the prison did not securely store other material. *Id.*; *see also* Ninth Cir. No. 07-99009, Dkt. Nos. 104, 113, 131, 154, 172, 438. At one point, Mr. Kadamovas shipped three bankers boxes of materials to his appellate attorney. However, she only received two, and one of them had clearly been repacked—presumably by prison officials. *See* Complaint, *Kadamovas v. Watson*, S.D. Ind. No. 19-cv-00540-JPH-MJD, Dkt. 1 at 17-18. To this day, it is unknown what happened to the third box, which contained legal materials that are irretrievably lost. Ninth Cir. No. 07-99009, Dkt. Nos. 154, 359-1 at 6-7.

During the pendency of the Ninth Circuit appeal, Mr. Kadamovas repeatedly implored prison officials, and the Ninth Circuit, to allow him meaningful access to his legal materials. Objections were raised regarding the prison's failure to secure his materials, to provide translation software, and to enable him to work on his case. *See, e.g.*, Ninth Cir. No. 07-99009, Dkt. Nos. 104, 113, 131, 154, 172, 438. In 2010, the appellate court denied a request for Mr. Kadamovas to keep a computer in his cell, but ordered prison officials to allow Mr. Kadamovas twenty hours per week usage of a dedicated computer. Ninth Cir. No. 07-99009, Dkt. No. 124. However, according to appellate counsel, these measures were unsuccessful because much of the electronic discovery and transcripts would not open on the BOP computer and the translation software was inadequate. *See* Ninth Cir. No. 07-99009, Dkt. No. 438 at 5-10. Moreover, the trial transcripts took years to perfect

and contained numerous errors that cannot be remedied, and the appellate briefing, orders, and ruling were never translated for Mr. Kadamovas.

In 2018, Mr. Kadamovas' appellate lawyers renewed the previous motion for adequate access to pleadings and case materials, including discovery. Ninth Cir. No. 07-99009, Dkt. No. 438. The materials submitted with this motion included a declaration from appellate counsel Margaret O'Donnell, documenting the disputes regarding access to legal materials (Ex. 120), as well as a declaration from Mr. Kadamovas noting that "I continue to be denied meaningful access to work on my case and challenge the government narrative. . . . All I ever wanted was a chance to have a fair trial as guaranteed by the United States Constitution . . . ." Ex. 121 (Kadamovas dec.) ¶ 5.

The actions of prison authorities have denied confidentiality in attorney-client communications. Time and again, officials have improperly opened confidential mail and interfered with Mr. Kadamovas' attempts to communicate and share legal materials with court-appointed attorneys. *See* Ex. 131.

For example, in April 2017, Mr. Kadamovas received a hard drive containing approximately 95,000 pages of discovery and Mr. Kadamovas' handwritten notes from his appellate attorneys. The hard drive included notes about discrepancies in the interviews and testimony of government witnesses, Mr. Kadamovas' notes about his memories of events, financial charts with bank

records, information about cooperating witnesses, mitigating details about Mr. Kadamovas' life as a musician, exculpatory evidence with details and exhibits, and hundreds of other files marked as attorney-client privileged. A BOP officer took the hard drive for inspection and scanning outside of Mr. Kadamovas' presence and did not deliver it for eight days. *See* Complaint, *Kadamovas v. Watson*, S.D. Ind. No. 19-cv-00540-JPH-MJD, Dkt. 1 at 20.

In response, the Ninth Circuit admonished government counsel on June 12, 2017, to "remind prison officials at Terre Haute to open properly designated 'special mail' sent to Kadamovas by his counsel in Kadamovas's presence." *See* Order, Ninth Cir. No. 07-99008, Dkt. 184 at 2. However, the problem persisted. In November 2017, Mr. Kadamovas received a second hard drive, which included all the attorney files from one of Mr. Kadamovas' trial attorneys, including their communications with Mr. Kadamovas, Mr. Kadamovas' investigation requests, financial charts, and Mr. Kadamovas' work on government exhibits. *See* Complaint, *Kadamovas v. Watson*, S.D. Ind. No. 19-cv-00540-JPH-MJD, Dkt. 1 at 22. Mr. Kadamovas informed the lawyer from USP Terre Haute that he wanted this hard drive to be scanned in his presence, in accordance with the Ninth Circuit's order. *Id.* In response, she told him that she had to consult with the trial prosecutors in the Central District of California. *See* Complaint, *Kadamovas v. Watson*, S.D. Ind. No. 19-cv-00540-JPH-MJD, Dkt. 1 at 22. Notwithstanding the court's ruling,

the hard drive was again scanned outside Mr. Kadamovas' presence and took 12 days to deliver to him. *Id.* at 23. Because of the government's scanning of Mr. Kadamovas' legal materials, the government gained access to his theory of the case, which undermines the adversarial process and calls into question the fairness of this and any future proceedings. In protest of these repeated violations of his rights, Mr. Kadamovas has engaged in five separate hunger strikes, totaling 116 days. *See id.* at 13. 6 HUNGER STRIKES + 30 DAYS 146

Mr. Kadamovas has long struggled to have meaningful access to information about his case, and to have a confidential and secure manner of communicating with his appointed attorneys. In violation of 28 C.F.R. § 540.18, BOP officials have improperly handled Mr. Kadamovas' legal mail repeatedly in recent years. In many of these instances, BOP personnel admitted fault and assured that the issue would not happen again. *See* Ex. 133 (Yuri Mail Admissions_Redacted). But the problems recur. Mr. Kadamovas recently filed a complaint to the United States District Court for the Southern District of Indiana, seeking declaratory and injunctive relief to halt further intrusions on his confidential attorney-client relationship. Ex. 131 (Kadamovas Compl.).

Mr. Kadamovas is of the view that if he cannot have attorney-client privileged communications and meaningful access to his legal materials, he cannot have an attorney. Accordingly, because of these repeated infringements on Mr.

Kadamovas' attorney-client privilege and lack of meaningful access to his legal materials, Mr. Kadamovas and his attorneys have been unable to establish a strong attorney-client relationship since their appointment. Mr. Kadamovas sought to proceed *pro se*, a request the Court denied. Dkt. No. 2396. He filed a *pro se* motion for relief under 28 U.S.C. § 2241 in Indiana, which was denied in a ruling citing 28 U.S.C. § 2255(e). *Kadamovas v. Watson*, S.D. Ind. No. 2:19-cv-00540-JPH-MJD, Dkt. 9 at 9. His pro se appeal of that denial has been pending in the Seventh Circuit for over three years. *Kadamovas v. Watson*, 7th Cir. No.20-1889. He has had limited phone contact and visits with legal counsel, having only spoken by phone with learned counsel Timothy J. Foley on one instance and only accepting one visit from former counsel Victoria Cassanova. – SHE WAS NOT APOINTED YET SO, SHE WAS NOT MY ATTORNEY AT THAT TIME!

In May 2023, Mr. Kadamovas began talking by phone and meeting with attorney Joshua Pickar from the Indiana Federal Community Defenders. Mr. Kadamovas and Mr. Pickar have been working collaboratively to challenge Mr. Kadamovas' conviction and sentence. However, the fact that Mr. Kadamovas has been unable to have meaningful access to his legal materials, as well as the limited time in their relationship, has made it difficult to fully set forth all potentially meritorious claims. Mr. Kadamovas undoubtedly has a superior knowledge of the record and relevant facts—having lived through them himself—and it takes time to build a relationship of trust wherein Mr. Kadamovas can communicate the relevant

information to Mr. Pickar. Without Mr. Kadamovas' full involvement, premised on meaningful access to his legal materials, it will be difficult for post-conviction counsel to raise issues completely, or to pursue and present evidence or witnesses in support of post-conviction claims.

As a result of Mr. Kadamovas' inability to understand much of the testimony and evidence at trial, his limited access to legal materials, and the BOP's interference in his communication with counsel, Mr. Kadamovas has not been able to fully participate in legal proceedings, including the § 2255 proceedings currently before this Court.

In addition to the problems sabotaging Mr. Kadamovas' ability to fully participate in the post-conviction process, this submission has been impaired by the medical health emergency caused by the worldwide pandemic associated with the COVID-19 virus, as well as Russia's invasion of Ukraine. Beginning in 2020 and extending to this year, the pandemic caused unprecedented distortions in social, governmental, and economic systems. Courthouses, schools, and government buildings closed, severely restricting access to normal sources of records and information. Prison visitation was curtailed. The task of interviewing witnesses became essentially impossible, and international travel became unpredictable and limited. The impact of the pandemic in this specific case has been documented in

counsel's proffers, including Dkt. Nos. 2376, 2397, 2409, and 2415, which are incorporated by reference.

The claims asserted in this motion, and the supporting exhibits, are necessarily limited by the inadequacies caused by the government's conduct, the effects of the pandemic, the restrictions on investigation (such as the refusal to give counsel the names of the jurors), and the limited time and resources allowed to the defense. The allegations set forth in this motion are brought after only limited investigation, with only limited resources, with only limited time. The assertions in this motion are not intended to be exhaustive, but present allegations demonstrating an entitlement to relief, and substantial evidence of constitutional and legal violations to be supplemented with additional evidence and assertions after full opportunity for investigation, discovery, and a hearing. Mr. Kadamovas wishes not to surrender his right to file under § 2255; however, he wishes to make clear that this petition is incomplete for the aforementioned reasons.